NOT DESIGNATED FOR PUBLICATION

No. 119,741

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DOMINIC VARGAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed October 25, 2019. Affirmed in part, vacated in part, and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM: Dominic Vargas appeals after a jury convicted him of fleeing or attempting to elude a police officer. On appeal, Vargas contends that the district court erred by entering convictions for both alternatively charged counts of fleeing or attempting to elude a police officer; by placing the option of "guilty" before "not guilty" on the verdict form; and by denying his motion for a mistrial. Vargas also claims that the State committed prosecutorial error in closing arguments. Finally, Vargas asserts cumulative error. We find that the district court erred in finding Vargas to be guilty of two alternatively charged counts, and we reverse one of those convictions. But we find

1

against Vargas' remaining claims of error. Thus, we affirm in part, reverse in part, and remand to the district court with directions.

FACTS

On March 31, 2016, Deputy James Maness attempted to stop a black Pontiac G6 for a traffic violation on Kellogg Avenue in Wichita. The driver was weaving in and out of traffic, cutting off other traffic, and failing to use a turn signal. As the car started to exit Kellogg Avenue, it appeared to be pulling over. However, it continued to proceed down the exit ramp as Deputy Maness activated his siren. The driver kept going and even passed several cars on the shoulder.

The vehicle slowed down and the deputy thought he was going to stop. The car then pulled into the parking lot of Whiskey Dicks. Deputy Maness was able to see the driver's face when he looked over his shoulder and when he looked into the vehicle's mirror. Deputy Maness described the driver as a light-skinned Hispanic male with a short buzz cut. Subsequently, the deputy was able to identify the driver as Dominic Vargas.

In the Whiskey Dicks parking lot, Vargas turned in front of the business and accelerated rapidly toward the south—which was the direction from which he had entered the lot. Vargas again failed to stop. He also failed to use his turn signal and cut across the street, nearly crossing into oncoming traffic. Deputy Maness later testified that it was obvious to him at this point that Vargas was actively attempting to flee. As such, the deputy once again activated his siren and followed the Pontiac.

As Vargas drove in the fast lane on Seneca, he made a right turn on McCormick to go west. Vargas was driving well over the speed limit and failed to adequately slow down for the turn. Deputy Maness testified that he was struggling to keep up. As Vargas was pulling away from the deputy, the Pontiac was straddling the lanes of traffic.

2

Deputy Maness alerted other officers of the pursuit on the radio. He testified at trial that it was frightening to see how fast Vargas was driving—at speeds in excess of 80 miles per hour—on a Sunday afternoon with a lot of people on the roads. Vargas ran a red light at the intersection of McCormick and Meridian. He then continued westbound, eventually reaching K-42 Highway. Vargas then turned southbound onto K-42 Highway by crossing lanes of traffic, and Deputy Maness was slowed by traffic on the highway as he continued to pursue the Pontiac.

Deputy Maness reached 120 miles per hour trying to catch up with the Pontiac on K-42. Vargas then ran another light at West Street, and Deputy Maness lost sight of the Pontiac due to traffic at the intersection. After Deputy Maness made his way through the intersection, the Pontiac was nowhere in sight, so he discontinued the pursuit at that point.

During the pursuit, Deputy Maness ran the license tag on the Pontiac. Once the pursuit was over, he discovered that the vehicle was registered to Jessica Garcia, who lived in the 700 block of W. MacArthur in Wichita. Another deputy found a Jessica Garcia on Facebook pictured with a man named Polo Giardo. After seeing the photograph, Deputy Maness determined that Giardo was not the person driving the Pontiac during the pursuit.

Other deputies went to Garcia's address and spoke to her. She told them that she had allowed Vargas—who was her boyfriend—to use her black Pontiac G6 on the day of the pursuit. Deputy Maness looked Vargas up in the Kansas driver's license system and was able to identify him as the person who had been driving the Pontiac during the pursuit. Deputy Maness also saw a photo of Vargas on Jessica's Facebook page and recognized him as the driver of the Pontiac.

The State charged Vargas with fleeing or attempting to elude a law enforcement officer under two theories—one for committing multiple traffic violations and one for reckless driving. The two theories were charged in the alternative. The State also charged Vargas with failing to signal a lane change.

During the jury trial that commenced on April 30, 2018, Deputy Maness testified regarding the events that had occurred on March 31, 2016. He identified Vargas as the driver of the Pontiac that failed to stop and fled. In addition, Deputy Maness testified that he had no doubt—and was 100% sure—Vargas had been the driver. Moreover, Deputy Joshua Kepley testified that he went to the address of the registered owner of the Pontiac and made contact with Garcia. He confirmed that Garcia told him that Vargas had borrowed her car on the day of the high speed chase.

As for Garcia, she testified that Vargas was her boyfriend and that they lived together with their child. Garcia admitted that Vargas had often borrowed her car. However, Garcia added that she often lent it out to friends and family. She denied telling Deputy Kepley that Vargas had actually borrowed her Pontiac on the day of the pursuit. Although Garcia explained that Vargas had access to her vehicle, she did not know who actually had her vehicle. Garcia testified that she believed that Vargas was in Hutchinson at the time because that is where he told her he would be. After the police contacted her following the pursuit, Garcia claimed she did not ask Vargas why law enforcement contacted her. Garcia said she "honestly didn't care. I cared about finding my car."

Ultimately, the jury convicted Vargas of fleeing or attempting to elude a law enforcement officer under both alternatively charged theories. The jury also found Vargas guilty of failing to signal a lane change. The district court adjudged Vargas guilty of all charges.

4

At the sentencing hearing, the State recognized that the jury convicted Vargas of both alternative charges. Because two counts of fleeing or attempting to elude a police officer were charged in the alternative, the State asked the district court to hold Count II in abeyance. The district court agreed and defense counsel said he had no objection. The district court sentenced Vargas to 15 months in prison for one count of fleeing or attempting to elude a law enforcement officer and imposed a $100 fine on the traffic violation. The journal entry of judgment filed after the sentencing hearing shows two convictions for fleeing or attempting to elude a law enforcement officer—with one being held in abeyance because it was an alternative charge.

ANALYSIS

*Alternative Charges*

On appeal, Vargas first contends the district court erred by entering convictions for both alternatively charged counts of fleeing or attempting to elude a law enforcement officer. As a remedy, he asks that we vacate one of the convictions. In response, the State contends that the district court had the authority to simply hold the second conviction of fleeing or attempting to elude a law enforcement officer in abeyance. It recognizes, however, that it would also be appropriate to merge the counts since they were presented in the alternative.

We note that Vargas makes this argument for the first time on appeal. Generally, an issue not properly preserved in the district court cannot be raised for the first time on appeal. However, when the issue involves a pure legal question arising on proved or admitted facts that will be finally determinative of a case, we may apply an exception. *State v. Godfey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Vargas asks us to do so here. See Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 35). The determination of whether convictions are mutually exclusive is a question of law, which we review

5

independently and without any deference to the district court. See *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014). Thus, we conclude that it is appropriate to address the merits of Vargas' argument.

The State is permitted to charge a defendant of any or all of these alternatives based on the evidence to be presented at trial. See *State v. Saylor*, 228 Kan. 498, 503-04, 618 P.3d 1166 (1980). Likewise, a jury is free to enter a verdict on each alternative count that it finds to have been proven beyond a reasonable doubt. Even so, "a defendant cannot be convicted of both offenses when the crimes are charged in the alternative." *State v. Garza*, 290 Kan. 1021, 1035-36, 236 P.3d 501 (2010) (citing *State v. Dixon*, 252 Kan. 39, 49, 843 P.2d 182 [1992]).

In other words, a district court does not have the authority to enter multiple convictions under alternatively charged theories. Moreover, in such cases the district court must impose a sentence for only one of the alternative counts. See *State v. Blanchette*, 35 Kan. App. 2d 686, 704, 134 P.3d 19 (2006); see also *State v. Williams*, No. 114,245, 2017 WL 542876, at *3 (Kan. App. 2017) (unpublished opinion), *rev. denied* 306 Kan. 1331 (2017). Accordingly, we conclude that the district court did not have the authority to enter two convictions for fleeing or attempting to elude a law enforcement officer in this case.

We do not find the State's argument that both convictions should stand because they are presented as "options within a means" to be persuasive. In support of its argument, the State cites *State v. Castleberry*, 301 Kan. 170, 339 P.3d 795 (2014). In *Castleberry*, the Kansas Supreme Court addressed an issue relating to multiple acts—not multiple convictions. 301 Kan. at 185. Here, the State did not proceed on a theory that Vargas committed the crime of fleeing or attempting to elude a law enforcement officer multiple times; rather, it simply charged one crime under alternative theories.

6

In support of its argument that it was appropriate for the district court to hold one of the convictions in abeyance, the State cites *Penn v. State*, No. 105,777, 2012 WL 3171813 (Kan. App. 2012) (unpublished opinion). In *Penn*, the defendant was charged with three acts of rape under alternative theories—"incapacity to consent" or "force or fear"—for a total of six counts. Although the jury found the defendant guilty on all six counts, the State requested at sentencing that the sentencing proceed under the "incapacity to consent" theories and the district court dismissed the alternative counts. In a K.S.A. 60-1507 proceeding, the defendant's rape convictions were reversed for insufficient evidence by a panel of this court. 2012 WL 3171813, at *6-7.

Because the alternative counts in *Penn* had been dismissed at sentencing, the panel found in the K.S.A. 60-1507 proceeding that "they were rendered void and cannot be reinstated." 2012 WL 3171813, *6. The panel noted that this was "a very unsatisfactory result" but that it was necessary due to the dismissal of the alternative counts. 2012 WL 3171813, at *6. In the present case, the State points to the "devastating consequences" in *Penn*, and suggests that district courts be allowed to hold convictions on alternative counts in abeyance to avoid this result.

Although the State makes an interesting policy argument that potentially could help eliminate the "unsatisfactory result" noted by the panel in *Penn*, we must follow the precedent set by the Kansas Supreme Court absent some indication that it is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). As noted above, our Supreme Court has clearly held "that a defendant cannot be convicted of both offenses when the crimes are charged in the alternative." *Garza*, 290 at 1036. In so holding, our Supreme Court cited both *Dixon*, 252 Kan. at 49, and *Blanchette*, 35 Kan. App. 2d at 704, with approval. As such, we find no indication the court is departing from this position.

In summary, we conclude that the district court had no authority to enter convictions on both of the alternatively charged counts of fleeing or attempting to elude a law enforcement officer asserted against Vargas. Likewise, we conclude that the district court did not have the authority to hold one of the convictions in abeyance until the time had passed for the filing of a K.S.A. 60-1507 motion. Accordingly, we vacate Vargas' second conviction for fleeing or attempting to elude a law enforcement officer for reckless driving and remand this case with directions to the district court to enter an amended journal entry reflecting one conviction for fleeing or attempting to elude a law enforcement officer as well as the conviction for failing to signal a lane change.

*Format of Verdict Form*

Next, Vargas contends that the district court violated his constitutional right to the presumption of innocence by placing the option of "guilty" before the option of "not guilty" on the verdict form. In response, the State correctly points out that this issue has been presented to Kansas appellate courts on multiple occasions. In each of these cases, both our Supreme Court and panels of this court have consistently ruled that it is not prejudicial to a defendant to list the "guilty" option on the verdict form before the "not guilty" option.

"While a verdict form is not technically a jury instruction, it is part of the packet sent with the jury which includes the instructions and assists the jury in reaching its verdict. It is appropriate to apply the same standard of review applicable to the review of instructions." *Unruh v. Purina Mills*, 289 Kan. 1185, 1197-98, 221 P.3d 1130 (2009). Hence, we apply a four-step analysis when analyzing a challenge to a verdict form: (1) we consider the reviewability of the issue; (2) we review the instruction to determine—without limitation—if the proposed instruction was legally appropriate; (3) we determine whether there was sufficient evidence—viewed in the light most favorable to the requesting party—to support the proposed instruction; and (4) we determine whether any

8

error requires reversal or was harmless. *State v. Pulliam*, 308 Kan. 1354, 1361, 430 P.3d 39 (2018).

Here, Vargas objected to the verdict form proposed by the district court and requested that the "not guilty" option appear before the "guilty" option. In denying Vargas' request, the district court correctly pointed out that the verdict form used in this case was consistent with the proposed verdict form set forth in the Pattern Instructions for Kansas (PIK). See PIK Crim. 4th 68.070. The district court also stated that its "policy" was to follow the PIK instructions.

It is important to recognize that our Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). Similarly, the verdict forms suggested in PIK were developed by well-informed committee members to provide "accuracy, clarity, and uniformity" to the judicial process. Furthermore, in *State v. Wesson*, 247 Kan. 639, 652-53, 802 P.3d 574 (1990), *cert. denied* 501 U.S. 1236 (1991), our Supreme Court expressly held that a verdict form placing the "guilty" option before the "not guilty" option does not violate a defendant's presumption of innocence.

In *Wesson*, the Kansas Supreme Court noted that juries are specifically instructed that a defendant is presumed innocent. Likewise, our Supreme Court found that any error on the verdict form regarding the order that the "guilty" and "not guilty" options are given is cured by the jury instruction on the presumption of innocence. 247 Kan. at 652. Here, it is undisputed that the district court appropriately instructed the jury that Vargas was presumed innocent and that the State bore the burden of proving that Vargas was guilty beyond a reasonable doubt.

For nearly 30 years, both the Kansas Supreme Court and panels of this court have applied the holding in *Wesson* regarding the order of the "guilty" and "not guilty" options on verdict forms. See *State v. Wilkerson*, 278 Kan. 147, 158-59, 91 P.3d 1181 (2004); *State v. Huffman*, No. 117,814, 2018 WL 6580110, at *8 (Kan. App. 2018) (unpublished opinion), *rev. denied* September 9, 2019; *State v. Pack*, No. 110,467, 2015 WL 1513974, at *5 (Kan. App. 2015) (unpublished opinion). Not only do we believe the decision in *Wesson* to be correct but we also are duty bound—as noted in the previous section of this opinion—to follow the precedent of our Supreme Court absent some indication the court is departing from its previous position. *Meyer*, 51 Kan. App. 2d at 1072. We have no reason to conclude that our Supreme Court will retreat from its holding in *Wesson* on this issue.

Consequently, we find that the district court did not err by including the "guilty" option before the "not guilty" option on the verdict form provided to the jury in this case. Moreover, following *Wesson* and its progeny, we find that even if there had been error in the wording of the verdict form that it was cured by the jury instructions. In particular, any error would be harmless in light of the instructions given to the jury on the presumption of innocence and on the State's burden of proof.

*Motion for Mistrial*

Vargas also contends that the district court erred in denying his request for a mistrial after the State alerted the jury pool that Vargas may be represented by the public defender's office. During voir dire, the prosecutor asked the potential jurors: "Does anybody know anybody in the Public Defender's office other than the folks that are here, [naming the defense counsel]? Anybody know anybody from the Public Defender's office?" Defense counsel requested a bench conference—which was not recorded—and evidently objected to the line of questioning.

Later, outside the presence of the jury, defense counsel argued:

"I do think that [the questions about the public defender] prejudices the jury against [Vargas] in a variety of ways, including the fact that . . . a lot of juries have the opinion if you don't hire counsel, then you obviously are not taking the case seriously enough or don't actually think you are innocent, as well as the fact of his financial means. The reputation the Public Defenders have in other areas and in this area, that could prejudice the jury.

"So I would ask the Court—I believe at this time it's my obligation to ask for a mistrial that the jurors are prejudiced because of that statement."

In response, the prosecutor noted that immediately after she asked the potential jurors if they knew anyone in the public defender's office, she also asked if they knew any attorney or defense attorney. As such, she suggested that there was no substantial prejudice requiring a mistrial. The district court agreed with the State and denied the motion for mistrial. In ruling, the district court stated that the question was asked in the context of whether the potential jurors knew anyone in the case and that it did not substantially prejudice Vargas or prevent him from receiving a fair trial.

K.S.A. 22-3423(1)(c) permits the district court to declare a mistrial if prejudicial conduct occurs during the proceedings that make it impossible for the trial to proceed without injustice. The statute creates a two-step process. First, the district court must determine whether there was some fundamental failure in the proceeding. Second, if the district court determines that there was a fundamental failure, it must then determine whether it is possible to continue the trial without injustice. *State v. Betancourt*, 299 Kan. 131, 144, 322 P.3d 353 (2014).

On appeal, the district court's denial of a motion for mistrial is reviewed using an abuse of discretion standard. *State v. Moyer*, 306 Kan. 342, 355-56, 410 P.3d 71 (2017). A judicial action constitutes an abuse of discretion if it is (1) arbitrary, fanciful, or

11

unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The party asserting an abuse of discretion—in this case Vargas—bears the burden of showing such abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

Based on our review of the record, we do not find that Vargas' right to a fair trial was substantially prejudiced by the questions asked by the State during voir dire. We also note that Vargas merely alleges that the jury might have made assumptions regarding his guilt based on the State's questions. We do not find this speculative argument to be sufficient to show substantial prejudice. See *State v. Harris*, 293 Kan. 798, 816-17, 269 P.3d 820 (2012) (no showing of prejudice where defendant argued the statements were likely to prejudice the jury). Thus, we conclude that the district court did not abuse its discretion in denying Vargas' motion for a mistrial.

*Prosecutorial Error*

In addition, Vargas contends that one of the prosecutor's comments during closing argument constituted reversible error because it deprived him of his constitutional right to a fair trial. In particular, Vargas argues that the prosecutor offered her opinion of his guilt in closing argument. In response, the State contends that Vargas has taken the prosecutor's statements out of context and that they fall within the wide latitude given a prosecutor when arguing to a jury.

We use a two-step process to evaluate claims of prosecutorial error: error and prejudice. First, we determine whether error occurred. If there was error, the second step is to determine whether prejudice resulted. Under the first step, we analyze whether the prosecutor's comments fell outside the wide latitude allowed to a prosecutor when discussing the evidence. At the second stage of the analysis, we focus on whether the error prejudiced the defendant's rights to a fair trial. If a due process violation occurred,

12

we assess prejudice by applying the constitutional error standard as set forth in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *State v. Sherman*, 305 Kan. 88, Syl. ¶¶ 6, 7, 8, 378 P.3d 1060 (2016). Under this analysis, prosecutorial error is harmless if the State proves that there is no reasonable possibility that the alleged error contributed to the verdict. *State v. Kleypas*, 305 Kan. 224, 316, 382 P.3d 373 (2016).

During closing argument, the prosecutor said:  "Count 2, the flee and elude, the State is asking that if you find that we've proven all of those things, and we believe we have, that you find him guilty." Vargas suggests that this statement by the prosecutor was erroneous because she gave her opinion regarding the strength of the evidence and his guilt. We recognize that it is improper for the prosecutor in closing argument to express his or her personal opinion about the defendant's guilt. *State v. Fisher*, 304 Kan. 242, 252, 373 P.3d 781 (2016). However, we do not find that the prosecutor's comments fall out of bounds in this case.

It is important to recognize that a prosecutor's arguments must be viewed in context, not in isolation. See *State v. Stone*, 291 Kan. 13, 19-20, 237 P.3d 1229 (2010). Here, before the prosecutor made the argument suggesting that she had proven the elements necessary to find Vargas guilty, she had reviewed with the jury the elements of the alternative counts of fleeing and eluding a law enforcement officer in a manner attempting to show the jury the evidence presented during the trial to support each element of the crime. After doing so, the prosecutor concluded by stating that she believed the prosecution had established each of the elements of the crime.

Of course, the fundamental purpose of a prosecutor's closing argument is to link the evidence favorable to the State to the elements that it must prove beyond a reasonable doubt to support a conviction. In fact, if a prosecutor does not believe he or she has presented sufficient evidence to support the State's charges, he or she should not pursue

13

the claim. Accordingly, we conclude that when the closing argument is viewed in context, the prosecutor properly reviewed the evidence presented at trial that she believed supported the various elements that the State had the burden to prove and—based on such evidence—it was appropriate for her to ask that the jury find Vargas guilty. See *State v. Pribble*, 304 Kan. 824, 832, 375 P.3d 966 (2016).

Here, we find that the prosecutor's argument was made in a context similar to that in *State v. De La Torre*, 300 Kan. 591, 612, 331 P.3d 815 (2014). It was not a robust statement of the prosecutor's personal opinion regarding Vargas' guilt, as she used the pronoun "we" instead of "I" in arguing that the State believed it had proven each of the required elements of Vargas' crimes. See *State v. Corbett*, 281 Kan. 294, 315-16, 130 P.3d 1179 (2006). We also note that the prosecutor's argument came after the district court had properly instructed the jury on the State's burden to prove each element of the crimes charged beyond a reasonable doubt. Likewise, the jury was reminded during closing arguments of the State's burden of proof.

When the statement in question is viewed in the context of the entire closing argument as well as in light of the instructions given to the jury, we do not find it to constitute an impermissible argument regarding the prosecutor's personal opinion of guilt. Rather, we find that the prosecutor was simply arguing how the evidence presented at trial supported each element of the crimes charged. It is significant that the prosecutor directed the jury to find Vargas guilty only "if you find that we've proven all of those things." Accordingly, we hold the prosecutor's statement did not fall outside the wide latitude afforded a prosecutor in attempting to obtain a conviction.

*Cumulative Error*

Finally, Vargas contends that his allegations of error combine to create cumulative error worthy of reversing his conviction. To prevail on a claim of cumulative error

14

requires a defendant to show multiple mistakes that individually would not require reversal but collectively undermined the defendant's ability to obtain a fair trial. See *State v. King*, 308 Kan. 16, 37-38, 417 P.3d 1073 (2018). A single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018).

In this case, the only error found involved the district court's decision to enter convictions—but not sentencing—for Vargas on both of the alternative counts of fleeing or eluding a law enforcement officer. As indicated above, the district court can cure this single error by simply vacating the second conviction. Furthermore, that error does not go to the question of whether Vargas received a fair trial. Accordingly, Vargas' claim of cumulative error fails.

Affirmed in part, vacated in part, and remanded with directions.